UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **HOLLINS TRAHAN** | **CASE NO. 6:20-CV-00353** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CITY OF CROWLEY ET AL** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

# MEMORANDUM RULING

Before the Court is defendant Jeremy Abshire's, Motion for Summary Judgment [ECF No. 42]. This Motion is opposed by plaintiff Hollins Trahan [ECF No. 52]. For the following reasons, this Motion is **DENIED.**

# I.
## BACKGROUND

Plaintiff Hollins Trahan alleges that he was injured when an off-duty Crowley police officer, Jeremy Abshire, used a taser to break up a fight at a Waffle House restaurant in Crowley, Louisiana on March 24, 2019.[1] At the time, Abshire was working a private security detail for Waffle House and, although off-duty, Abshire was wearing his Crowley Police Department uniform.[2] The details of how the fight started are not in dispute. Trahan entered the restaurant and exchanged words with another patron, Mark Istre.[3] Both patrons were intoxicated. Trahan and Istre got into a physical confrontation. Trahan had Istre in a chokehold when Abshire first witnessed

---

[1] ECF No. 1, ¶ 5.
[2] ECF No. 42-2, p. 1.
[3] *See* ECF. No. 55-1, p.101-102; ECF No. 52, p. 1-2.

1

the fight. Abshire contends that, because of the danger posed by the chokehold, he decided to deploy his taser on Trahan to break Trahan's hold on Istre.[4]

The details of Abshire's interaction with Trahan is contested after Abshire first deployed his taser. Abshire contends that he administered a series of routine taser shocks to Mr. Trahan's back, which caused Trahan to release Istre.[5] Abshire contends that Trahan then stood up and began to fight Abshire. Abshire states that, if his taser fired at this point, it was not intentional.[6] Trahan, however, states that Abshire first fired his taser at Trahan's face, not Trahan's back. The second taser shot hit Trahan on the shoulder, and he then fell to the floor.[7] Trahan states that Abshire stood over him and tased him several more times while verbally taunting him, even though the fight had ended and Istre had left the restaurant.[8]

Trahan filed suit in March 2020, asserting federal and state law claims against Abshire, the City of Crowley, City of Crowley Chief of Police James Broussard, and an unidentified insurance carrier.[9] Trahan subsequently amended his complaint in May 2020, adding Waffle House as a defendant and adding additional claims.[10] The case proceeded to discovery and Abshire subsequently filed his Motion for Summary Judgment based on qualified immunity in November 2021.[11]

---

[4] ECF No. 42-3, p. 43-45.
[5] *Id.*, p. 45-46.
[6] *Id.*, p. 47.
[7] ECF No. 52-1, p. 105, lines 3-12.
[8] *Id.* p. 107-108.
[9] ECF No. 1.
[10] ECF No. 6.
[11] ECF No. 42.

## II.
## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where one party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The key question in this analysis is whether the evidence on record "is such that a reasonable jury could return a verdict for the nonmoving party."[13] The party seeking summary judgment bears the burden of proving that there are no genuine issues of material fact to be resolved at trial.[14] If the moving party meets this initial threshold, then "the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial."[15] During this analysis courts must "view the facts in the light most favorable to…the nonmoving party."[16] Further, "all justifiable inferences are to be drawn" in favor of the nonmoving party.[17]

## III.
## ANALYSIS

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[18] When a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.[19] Qualified immunity is "immunity from suit rather than a mere defense to liability" and should, therefore, be resolved at the earliest possible stage in the litigation.[20]

---

[12] Fed. R. Civ. P. 56(a).
[13] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).
[14] *Bustos v. Martini Club Inc.*, 599 F.3d 456, 468 (5th Cir. 2010).
[15] *Id.*
[16] *City and Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 603 (2015).
[17] *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).
[18] *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).
[19] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).
[20] *Id.*; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

Whether an officer is entitled to qualified immunity turns on a two-prong inquiry. First, do the facts shown by the plaintiff demonstrate the violation of a constitutional right?[21] Second, was that right "clearly established" at the time of the defendant's alleged misconduct?[22] "The constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right."[23] An officer's conduct that violates the plaintiff's constitutional rights does not preclude the qualified immunity defense if the officer's conduct was objectively reasonable.[24] The "objective reasonableness" standard ensures that officers were on notice that their conduct was unlawful before they are subjected to a lawsuit.[25] Whether the actions of an officer are objectively reasonable turns on the circumstances confronting the officer as well as "clearly established law" in effect at the time of the officer's conduct.[26] "The subjective intent of the officer is irrelevant, and the officer's knowledge of the law need not rise to the level of a 'constitutional scholar.'"[27] A court's analysis of qualified immunity may start with either step of the inquiry.[28]

Trahan asserts that Abshire used excessive force by administering taser shocks after he stopped fighting Istre and was no longer resisting arrest. An excessive force claim requires proof that the plaintiff "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[29] The reasonableness of force under the Fourth Amendment is determined from the perspective of a

---

[21] *Harlow*, 457 U.S. at 818.
[22] *Id*.
[23] *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998).
[24] *Id*. at 467.
[25] *Pearson*, 555 U.S. at 244.
[26] *Id*. at 243.
[27] *Sanchez*, 139 F.3d at 467 (citing *Harlow*, 457 U.S. at 815–17).
[28] *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).
[29] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

reasonable officer on the scene, rather than with "the 20/20 vision of hindsight."[30] In determining whether a use of force was reasonable, courts pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[31] This determination is inappropriate at the summary judgment phase "if there are 'underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively unreasonable manner.'"[32]

Courts have generally held that taser shocks administered after a suspect has ceased resisting arrest and no longer poses a threat are excessive and objectively unreasonable. [33] Here, the parties do not dispute that Abshire used force against Trahan, and that Trahan was injured as a result of this force. The parties' accounts differ, however, as to whether Trahan was still fighting with Istre and resisting arrest at the time Abshire administered the last shock from his taser. The parties also dispute where Trahan was struck by the darts from Abshire's taser. Abshire states that he entered the restaurant, saw Trahan holding Istre in a chokehold on the ground, and had to make a split-second decision as to how to respond.[34] Abshire testified that the chokehold was "a very dangerous position" and required him to act quickly.[35] Abshire further testified that Trahan ignored his verbal commands to release Istre.[36] Abshire testified that he believed that the taser

---

[30] *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir.2008) (internal quotation marks omitted).
[31] *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).
[32] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993)).
[33] *See, e.g., Ramirez v. Martinez,* 716 F.3d 369, 377 (5th Cir. 2013)*; Anderson v. McCaleb*, 480 F.App'x 768, 773 (5th Cir. 2012). The parties do not dispute that taser shocks administered under these circumstances would constitute excessive and objectively unreasonable force.
[34] ECF No. 42-3, p. 8-9.
[35] *Id.*, p. 9, lines 4-5.
[36] *Id.*, p. 7.

was the safest option because of the position of Trahan and Istre in the crowded lobby of the restaurant.[37] Accordingly, Abshire states that he administered four shocks to Trahan's back.[38] Abshire testified that Trahan "popped up" to his feet after the shock from the taser and began scuffling with Abshire.[39] Mr. Abshire further testified that he does not recall if the taser was used in that scuffle, but that it was "inadvertent" if it was triggered.[40] Trahan's account differs starkly. Trahan testified that was not warned before he was tased.[41] He also states that Abshire administered at least one taser shock to his face—just below his right eye—and not solely to his back.[42] He states that he was then struck by a taser dart on his shoulder, which caused him to roll onto the floor.[43] Trahan claims that Abshire then stood over him and tased him several more times in the chest and neck area while taunting him verbally.[44] Trahan states that, when the last shocks were administered, he was not resisting arrest and Istre had already left the restaurant.[45]

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[46] Here, however, there is evidence in the summary judgment record that supports both Abshire's and Trahan's version of the events. First, the taser usage logs in the record show that the taser was administered in two different bursts for approximately ten seconds.[47] This evidence appears to rebut at least some aspects of Trahan's story to the extent that it is implausible that Abshire could repeatedly tase

---

[37] *Id.*, p. 8-10.
[38] *Id.*, p. 8-10.
[39] *Id.*, p. 10-11.
[40] *Id.* p. 11-12.
[41] ECF No. 52-1, p. 3.
[42] *Id.*, p. 4.
[43] *Id*
[44] *Id.*, p. 5-8.
[45] *Id.*
[46] *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).
[47] ECF No. 42-3, p. 17 (marked as Exhibit B).

Trahan while taunting him given the amount of time the taser was administered according to the logs in the record. On the other hand, the record includes the deposition testimony of Captain Malissa Withers, who led an internal investigation of the incident. Her testimony tends to support Trahan's allegation that he was tased while he was no longer resisting or fighting with Istre.[48] For example, Captain Withers testified that she viewed the video evidence of the event, and the video appeared to show that Abshire tased Hollins *after* Istre had left the building.[49] Captain Withers also testified that Abshire tased Trahan on his chest, which is contrary to Abshire's testimony that he administered the taser only on Trahan's back.[50] Captain Withers also testified that eyewitnesses stated that Trahan was tased after the fight had ended, and that Trahan was tased on his neck and chest.[51] Notably, this internal investigation led Captain Withers to conclude that Abshire had violated department policies regarding use of force.[52] Considering the totality of the circumstances as reflected in the summary judgment record, the Court concludes that there are genuine questions of material fact as to whether Abshire's use of force was excessive and objectively reasonable.

With respect to the second prong of the inquiry – whether the right was clearly established – "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[53] Courts generally address the "clearly established" prong by looking at cases with analogous facts. In so doing, courts must not "define clearly established law at a high level of generality."[54] "Abstract or general statements of legal principle

---

[48] *See* ECF No. 67-1, p. 11-14.
[49] *Id.*, p. 8, lines 10-14.
[50] *Id.*, p. 20.
[51] *Id.*, at 79-80, 107-108.
[52] *Id.*, p. 3-4.
[53] *Anderson*, 483 U.S. 635 at 640.
[54] *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to *the specific facts of the case*."[55] Courts have held that the use of a taser shocks on a suspect who is no longer resisting arrest or posing a danger to the officer are excessive and objectively unreasonable.[56] Assuming that the trier of fact credits Trahan's version of the events—that Trahan was laying on his back, Istre had exited the restaurant, and Trahan was no longer resisting when Abshire administered his taser—Abshire's actions violate clearly established law.[57] However, because there are genuine questions of material fact as to events resulting in Trahan's injuries, summary judgment is not appropriate.

## IV.
## CONCLUSION

In sum, the Court concludes that there are genuine questions of material fact regarding the circumstances of Trahan's injuries and whether Abshire's use of force was excessive and objectively unreasonable. Accordingly, Abshire's Motion for Summary Judgment [ECF No. 42] is **DENIED.**

THUS DONE in Chambers on this 2812th day of May, 2022.

                                                  ROBERT R. SUMMERHAYS
                                                  UNITED STATES DISTRICT JUDGE

---

[55] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (emphasis added); *see also Kinney*, 367 F.3d at 350.
[56] *See, e.g., Anderson v. McCaleb*, 480 F.App'x 768, 773 (5th Cir. 2012).
[57] *Id*.